# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

EVELYN JENNINGS,

    *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 09-CV-13364

DISTRICT JUDGE BERNARD A FRIEDMAN
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 10 at 11, 94.) Plaintiff's relevant employment includes work as a cashier/clerk for 5 days in 2005, as a clerk in a hospital for three years and a cook at a bar and grill for one year. (Tr. at 107 121.) Plaintiff filed the instant claims on May 26, 2006, alleging that she became unable to work on June 4, 2004. (Tr. at 94.) The claim was denied at the initial administrative stages. (Tr. at 37.) In denying Plaintiff's claims, the Defendant Commissioner considered osteoarthritis and allied disorders, and rotator cuff tendinitis as possible bases of disability. (*Id.*) On December 2, 2008, Plaintiff appeared via videoconferencing before Administrative Law Judge ("ALJ") Troy M. Patterson, who considered the application for benefits *de novo*. (Tr. at 11-20.) In a decision dated January 15, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 20.) Plaintiff requested a review of this decision on January 23, 2009. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 5, 2009, when, after the review of additional exhibits[2] (Tr. at 5-6), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On August 26, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the

claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis; however, since neither the ALJ nor the Appeals Council reached any issues beyond Step One, the analysis is limited to the question whether Plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534.

**D.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of June 4, 2004, through September 30, 2005, the date she was last insured.[3] (Tr. at 13.) At step two, the ALJ found that Plaintiff's anxiety disorder, major depression, post traumatic stress disorder, gastrointestinal reflux disease, headaches, chronic rhinitis, sinusitis and pansinusitis, fibromyalgia, bursitis, neck, right shoulder, and knee pain, joint pain, degenerative osteoarthritis of the cervical, thoracic and lumbar spines were severe impairments within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform her past relevant work. (Tr. at 18.) At step five, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. (Tr. at 15-18.)

### E. Administrative Record

A review of the record evidence indicates that Plaintiff was treated for shoulder and elbow pain in 2002 and had a "very good range of motion" after having participated in physical therapy such that she was able to return to work. (Tr. at 227-30.)

---

[3] In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423 (d)(1)(A). Federal courts have therefore held that "[m]edical evidence is relevant to prove a disability only while the claimant enjoyed insured status. However, medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Social Security*, 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006), citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979 and *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976). Neither party takes issue with this conclusion.

A bone density scan taken in May of 2004 was normal. (Tr. at 209.) A mammogram taken at the same time was also negative. (Tr. at 210.)

Plaintiff was treated at the West Branch Regional Medical Center for neck and back spasms and contusions of the right shoulder and knees after being involved in a car accident in September of 2005. (Tr. at 195-99.) At that time, a series of x-rays were taken of Plaintiff's: (a) "T spine swimmers view" revealed "mild degenerative changes" but no fractures; (b) cervical spine revealed no fracture or subluxation; (c) chest revealed no evidence of pulmonary or cardiovascular disease; (d) lumbar spine revealed no fracture; (e) pelvis revealed no fracture; (f) right shoulder revealed no fracture or dislocation; (g) bilateral knees revealed no fracture but did show a spur. (Tr. at 200-01.) Another x-ray of Plaintiff's chest was taken in September of 2005 due to Plaintiff's persistent cough which was negative. (Tr. at 208.)

A month after the expiration of her insured status, an MRI of Plaintiff's right shoulder taken in October of 2005 showed "[m]inimal joint effusion" and "no definite tear." (Tr. at 205.) Although Plaintiff's examination was "benign" and a "stable" shoulder, based on her subjective complaints, she was again referred to physical therapy and improved with therapy. (Tr. at 232-36.) An EMG performed at the same time showed "no electrodiagnostic evidence" for "right lumbosacral radiculopathy" or "[g]eneralized peripheral polyneuropathy" concluding that "results of today's testing do not explain the patient's symptoms" of back pain or right foot pain and numbness because there "was no evidence today to suggest axonal loss in the right lower extremity." (Tr. at 206.) In 2006, Plaintiff was again referred to physical therapy for right shoulder pain and was able to return to "almost full" range of motion by April of 2006. (Tr. at 238-39.) Upon discharge from therapy, it was noted that Plaintiff was "tearful" and also reported that she had fibromyalgia. (Tr. at 240.) Plaintiff was treated by Terry Schmidt, P.A. and Dr.

7

Awerbach for facial pain, multiple arthralagias/myalgias, allergic rhinitis, secondary pansinusitis, and anxiety from 2005-06. (Tr. at 213-26.)

After the expiration of her eligibility for benefits, Plaintiff was also treated at the Hale St. Joseph Medical Clinic from February 2006 though October of 2008 for allergic rhinitis, secondary pansinusitis, headaches, neck pain, back pain, right shoulder tendinitis, depression, fibromyalgia, osteoarthritis, facial pain, and dyslipidemia, (Tr. at 320-25, 328-29.)

On September 29, 2006, Plaintiff was assessed at the request of the Michigan Disability Determination Service who diagnosed her with major depression, single episode, moderate, social anxiety disorder, generalized anxiety disorder, and post-traumatic stress disorder. (Tr. at 283-89.) The psychologist also found that Plaintiff showed "adequate contact with reality," "fair insight into her status,"and that her "mental activity was spontaneous" and that her "responses were generally reasonable and logical." (Tr. at 287.)

A Psychiatric Review Technique performed in October of 2006, concluded that there was "insufficient evidence" of Plaintiff's medical disposition. (Tr. at 293.) However, it was noted that the "only medi[c]ation she is taking for control of psych symptoms is Xanax for anxiety" and determined that Plaintiff is "only considered partially credible." (Tr. at 305.) A Mental Residual Functional Capacity (RFC) Assessment was not completed. (Tr. at 315-18.)

A Physical RFC Assessment performed in October of 2005, within a month of the expiration of her eligibility for benefits concluded that Plaintiff is able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was limited in her ability to push or pull with her upper extremities. (Tr. at 308.) The assessment further found that Plaintiff was occasionally limited in postural maneuvers and should never be required to balance, had no manipulative limitations other

8

than that she should not be required to reach overhead on the right, and that she had no visual, communicative or environmental limitations other than that she should avoid hazards, cold and vibrations. (Tr. at 309-11.) It was noted that there was no treating or examining source statement to compare findings with and that Plaintiff was found to be "only partially credible." (Tr. at 312-13.)

Plaintiff indicated, on her daily activity report, that she makes her own coffee, watches television, does dishes, "pick[s] up a little," "walk[s] around the yard for a few (10) minutes," visits friends, prepares her own meals, does laundry, does some cleaning, shops in stores, handles her own finances, goes to church, paints and spends time on the computer. (Tr. at 151-55.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 15-18.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically argues that the ALJ did not properly evaluate Plaintiff's pain, limitations and credibility because the ALJ failed to explain his findings and because the limited daily activities performed by Plaintiff do not establish that she is capable of performing light work in a work setting. (Doc. 12 at 16-19.) Plaintiff further argues that although the VE indicated a person would need to be productive for 85% of the workday, the ALJ failed to give proper weight to Plaintiff's testimony that she would be unable to work due to frequent absences, crying spells, memory problems, pain, anxiety and difficulty getting along with others. (Doc. 12 at 23-25.) In addition, Plaintiff further argues that the ALJ failed to give proper weight to the assessments and RFC opinions of the state agency physician and consultative physician, i.e., their diagnoses that Plaintiff suffers from various physical and mental impairments. (Doc. 12 at 20-23.)

As to the ALJ's findings that Plaintiff's complaints of disabling pain and other symptoms were not fully credible, Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health*

*& Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding the level of pain was not fully credible and that, despite the diagnoses of the examining and consultative physicians, Plaintiff is not disabled, prior to the expiration of her eligibility for benefits on September 30, 2005. Although Plaintiff does have some medically established impairments, there is no evidence that those conditions were disabling during the time she qualified for benefits. Immediately following Plaintiff's car accident in September of 2005, examinations of Plaintiff showed "mild degenerative changes" but no fractures, subluxation, dislocation or spurring. (Tr. at 200-01, 205.) Chest x-rays have been

negative. (Tr. at 208.) Even though Plaintiff's examination was "benign" and her shoulder was "stable," based on her subjective complaints, she was again referred to physical therapy and was able to return to "almost full" range of motion by April of 2006. (Tr. at 232-36, 238-39.) An EMG performed at the same time showed "no electrodiagnostic evidence" for "right lumbosacral radiculopathy" or "[g]eneralized peripheral polyneuropathy" concluding that "results of today's testing do not explain the patient's symptoms." (Tr. at 206.) Despite Plaintiff's psychological diagnoses of depression and anxiety, doctors found that she showed "adequate contact with reality," "fair insight into her status," and that her "mental activity was spontaneous" and that her "responses were generally reasonable and logical." (Tr. at 287.) The examining and consultative physicians regarding mental and physical capabilities unanimously found Plaintiff to be only "partially credible." (Tr. at 305, 312-13.) Furthermore, Plaintiff's complaints of disabling pain are undermined by her description of her daily activities that she makes her own coffee, watches television, does dishes, "pick[s] up a little," "walk[s] around the yard for a few (10) minutes," visits friends, prepares her own meals, does laundry, does some cleaning, shops in stores, handles her own finances, goes to church, paints and spends time on the computer. (Tr. at 151-55.) I therefore suggest that the ALJ's decision that objective medical evidence does not confirm the severity of the alleged pain rising from the condition is supported by substantial evidence.

For all these reasons, and after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.    REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                              s/ **Charles E Binder**
                                              CHARLES E. BINDER
Dated: April 6, 2010                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: April 6, 2010         By     s/Patricia T. Morris
                                          Law Clerk to Magistrate Judge Binder