UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELYN JENNINGS,

    Plaintiff,                                               Civil Action No. 09-CV-13364

vs.                                                       HON. BERNARD A. FRIEDMAN

MICHAEL ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS

This matter is presently before the court on cross motions for summary judgment. Magistrate Judge Charles E. Binder has submitted a Report and Recommendation ("R&R") in which he recommends that the court grant defendant's motion and deny plaintiff's motion. Plaintiff has filed timely objections to the R&R. For the reasons stated below, the court shall reject the magistrate judge's recommendation, deny both parties' motions for summary judgment, and remand the matter for further administrative proceedings.

This is a social security disability case. Plaintiff alleges that she became disabled in June 2004 due to a variety of physical and mental conditions (Tr. 120). The Administrative Law Judge ("ALJ") found that plaintiff had the following severe impairments as of September 30, 2005, when her insured status expired: "anxiety disorder, major depression; post traumatic stress disorder; gastrointestinal reflux disease; headaches; chronic rhinitis, sinusitis and pansinusitis; fibromyalgia; bursitis; neck, right shoulder, and knee pain; join pain; and degenerative osteoarthritis of the cervical, thoracic and lumbar spines" (Tr. 13). The ALJ also found that while these impairments

prevent plaintiff from performing her past work as a gas station cashier/clerk (light, unskilled), a hospital clerk (medium, semi-skilled), and cook (light, semi-skilled) (Tr. 27), she has the residual functional capacity for a limited range of light work. The ALJ found that plaintiff can do light-level work "except that she is not able to do any overhead reaching with right upper extremity, unable to work at a production rate pace, and is limited to work where the interpersonal contact between co-workers and supervisors would be superficial and minimal" (Tr. 15). Based on vocational expert ("VE") testimony, the ALJ found that tens of thousands of "food preparation," "packing," "office clerk," and "kitchen helper" jobs exist which would accommodate these limitations (Tr. 19). The ALJ therefore concluded that plaintiff is not disabled.

Substantial evidence supports the ALJ's finding that most of plaintiff's *physical* impairments do not prevent her from performing a limited range of light-level work. As noted by both the ALJ and the magistrate judge, the medical evidence does not indicate that plaintiff's joint pain is of disabling severity. While plaintiff was insured, the majority of her physical complaints stemmed from an automobile accident in September 2005. X-rays of the affected areas were generally unremarkable, and the treatment notes show steady improvement.

However, there are two significant aspects of plaintiff's physical condition which have not been developed sufficiently to enable defendant to competently assess their impact on plaintiff's ability to work, namely, plaintiff's headaches and the side-effects of her many medications. As to the first, the ALJ noted plaintiff "testified that she has longstanding daily headaches" (Tr. 17). Indeed, plaintiff testified that she gets headaches "daily" and that they last "anywhere from two or three hours to two or three days" (Tr. 31). For relief, she takes pain medication and lies down (Tr. 32). "I go in my room where it's quiet and dark" (Tr. 32). There is

2

evidence from shortly after the expiration of plaintiff's insured status describing plaintiff's headaches as "increasing" and "incapacitating" (Tr. 214) and "chronic severe" (Tr. 235). As noted above, the ALJ found that plaintiff's headaches are a severe impairment.

As for the side-effects of plaintiff's medications, the ALJ noted that plaintiff "has been prescribed a number of medications, including: Prilosec; Reglan; Protonix; Toradol; Nasacort; Allegra; Keflex, over the counter Sudafed; Xanax; Fiorecet, Vicodin; Premarin; Effexor; Mobic; Ultram; and Cymbalta. . . . Her representative noted that her current medications are Vicodin, Xanax and Protonix" (Tr. 15-16). The ALJ also acknowledged plaintiff's testimony that "her medication[s] make her sick to her stomach, make her sleepy and increase her anxiety" (Tr. 16). The Disability Determination Service ("DDS") noted plaintiff "reports that she is unable to watch an entire TV show without falling asleep" (Tr. 312).

The ALJ made no specific findings regarding the severity of either plaintiff's headaches or the side-effects of her medications. He did not specifically find her testimony to lack credibility. Nor did he develop the record adequately as to either of these issues, e.g., by questioning plaintiff more closely at the hearing or by obtaining an opinion from a competent medical expert. Nor, again due to the lack of evidence on these issues, did the ALJ incorporate any findings as to these issues in his hypothetical question to the VE, thereby depriving the VE's testimony in response thereto of any evidentiary value. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [plaintiff's] individual physical and mental impairments.")

Further, the record does not contain substantial evidence to support the ALJ's finding

3

that plaintiff is *mentally* able to perform the jobs identified by the vocational expert. As noted above, the ALJ found that plaintiff has anxiety, major depression and post traumatic stress disorder ("PTSD") and that these qualify as "severe impairments." These findings, which are not challenged by either party, clearly are supported by the record. As the ALJ noted, plaintiff

> has a history of mental ailments. She sought treatment at AuSable Valley Community Mental Health for anxiety and depression from February 1997 to March 1998 and then again from July 2005 to June 2006. Her impairments resulted in low self esteem, fear of social interaction, tearfulness, crying spells, and difficulties completing tasks. She attributed part of these ailments to past family trauma and her financial difficulties. She also noted that her depressive complaints were related to her overall health condition. Major depression, social anxiety disorder, generalized anxiety disorder and post traumatic stress syndrome were diagnosed and she was to attend a post traumatic stress disorder group. (Exhibit 6F, p. 11-13)

(Tr. 16.) Plaintiff indicates that she has "so much anxiety that I don't want to leave the house" (Tr. 156). Plaintiff's medical records contain several references to her anxiety, depression and PTSD (e.g., Tr. 220-23, 227, 246, 251, 283-89, 321-25, 329). Plaintiff has characterized as "extreme" her anxiety and its effect on her ability to work (Tr. 248-49). George Pestrue, a Ph.D. psychologist who examined plaintiff in September 2006 at defendant's request, found her to be "moderately to strongly depressed" (Tr. 287) and diagnosed major depression, social anxiety disorder, generalized anxiety disorder, and PTSD (Tr. 289). He assessed her current GAF at 48.[1] Plaintiff's GAF was

---

[1] As noted by Magistrate Judge Pepe in *Mathious v. Barnhart*, 490 F. Supp.2d 833, 838 n.4 (E.D. Mich. 2007),

> [t]he GAF [Global Assessment of Functioning] score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of

4

assessed three months early at 38 (Tr. 246).

Despite the many references in the record to plaintiff's mental impairments, and despite the ALJ's finding that they are "severe," the record as to these impairments has not been sufficiently developed. Bruce G. Douglass, Ph.D., whom the DDS requested to review the record and complete a Psychiatric Review Technique form, checked only one box on the entire form, namely, "Insufficient Evidence" (Tr. 293). Dr. Douglass did not, and presumably due to insufficient evidence could not, provide any information about the nature and extent of plaintiff's depression and anxiety (Tr. 296, 298). Nor, significantly, was Dr. Douglass able to indicate the nature and extent of the functional limitations caused by these impairments (Tr. 303). In the "consultant's notes" section at the end of this form, Dr. Douglass could do little more than repeat Dr. Pestrue's findings and note that "the 3rd party [plaintiff's friend, *see* Tr. 159-66) lists difficulties that could be considered related to her psychological condition as memory problems, ability to complete tasks, concentration problems, understanding, following instructions, and getting along with others" (Tr. 305). Dr. Douglass concluded with the unexplained comment, "the clm is only considered partially credible" (Tr. 305).

---

severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id.* A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id.* A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id.*

5

A Physical Residual Functional Capacity Assessment form, completed by Michael O'Connor for the DDS, noted plaintiff's "anxiety related complaints" and the side-effects of her medications (Tr. 312, 314) but did not include them in assessing plaintiff's ability to work (Tr. 307-314). A Mental Residual Functional Capacity Assessment form is entirely blank, unsigned, and undated (Tr. 315-18).

This scant and spotty record simply does not provide a sufficient factual basis for the ALJ to make reasoned, supportable findings concerning plaintiff's mental and physical residual functional capacity. On this record, no fact-finder has any way of knowing whether plaintiff's headaches and/or medication side-effects interfere with her ability to work on a full-time basis. The VE testified that plaintiff would not be able to perform any of the jobs he identified if she misses more than one day of work per month (Tr. 35). The matter must be remanded so that the record can be sufficiently developed, specific findings can be made, and such findings can be incorporated into proper hypothetical questions in order to determine the extent to which these impairments are vocationally limiting.

The record must also be further developed to determine the extent to which plaintiff's mental impairments limit her ability to work. The present record does not support the ALJ's finding that plaintiff's anxiety, depression and PTSD (and plaintiff's headaches) can be accommodated by avoiding "production rate pace" and restricting plaintiff "to work where the interpersonal contact between co-workers and supervisors would be superficial and minimal" (Tr. 15). These restrictions are not based on a sufficiently developed record or competent medical opinion. As noted, an evaluation of plaintiff's mental residual functional capacity was never done in this case. The only psychological evaluation, that done by Dr. Pestrue, did not comment on

6

plaintiff's ability to work notwithstanding her mental impairments, did not suggest any accommodations which may be necessary, and did not provide a factual basis from which the ALJ reasonably could fashion such limitations.

On remand, defendant shall:

1. Develop the record regarding plaintiff's headaches and the side-effects of her medications. This must include obtaining a medical expert's opinion regarding the severity and extent of these impairments.[2]

2. Obtain an opinion from a qualified mental health professional describing the severity of plaintiff's mental impairments and stating whether plaintiff can work notwithstanding these impairments and, if so, with what accommodations.

3. Make findings, based on the expanded record, regarding plaintiff's physical and mental residual functional capacity.

4. Convene a follow-up hearing at which a vocational expert is questioned regarding the existence of jobs for a person of plaintiff's age, educational level, work experience, and residual functional capacity.

Accordingly,

---

[2] As noted above, plaintiff's insured status expired on September 30, 2005. The issue in this case is whether plaintiff was disabled prior to this date. It will be for defendant on remand to determine the weight to be given evidence post-dating the expiration of plaintiff's insured status. *See Jones v. Commissioner of Social Security*, 1997 WL 413641, at *1 (6th Cir. July 17, 1997) ("Evidence relating to a later time period is only minimally probative, *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987), and is only considered to the extent it illuminates a claimant's health before the expiration of his or her insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988).")

IT IS ORDERED that Magistrate Judge Binder's R&R is rejected insofar as it is inconsistent with this opinion.

IT IS FURTHER ORDERED that both parties' summary judgment motions are denied.

IT IS FURTHER ORDERED that this matter is remanded for further administrative proceedings as directed above.

S/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: June 2, 2010
      Detroit, Michigan